## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIGDALIA ARROYO PICART, on behalf of her minor daughter A.M.G.A.<br><br>    Plaintiffs<br><br>        vs.<br><br>HOSPITAL METROPOLITANO DR. PILA PONCE, INC. or, alternatively, JOHN DOE Corporation d/b/a HOSPITAL METROPOLITANO DR. PILA PONCE.; DR. ALFREDO A. BRAVO COLON and his wife JANE DOE each personally and in representation of their conjugal partnership; JOHN DOES 1, 2 and 3; A, B and C CORPORATIONS; UNKNOWN INSURANCE COMPANIES A through H<br><br>    Defendants | CIVIL NO.:<br><br><br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff, Migdalia Arroyo Picart, on behalf of her minor daughter A.M.G.A., through her undersigned counsel, respectfully states and prays as follows:

### Jurisdiction and Venue

1.      The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.      Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.   Venue is appropriate in this judicial district

2.      Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.   Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

## Parties

4.      Plaintiff A.M.G.A., is a minor whose interests are herein represented by her mother, Migdalia Arroyo Picart ("Mrs. Arroyo").   Plaintiff A.M.G.A. and Mrs. Arroyo are residents of Milford, Massachusetts.

5.      Defendant Hospital Metropolitano Dr. Pila Ponce, Inc. or, alternatively, John Doe Corporation d/b/a Hospital Metropolitano Dr. Pila Ponce (hereinafter "Hospital Dr. Pila") is a corporation organized under the laws of the Commonwealth of Puerto Rico which has its principal place of business in Ponce, Puerto Rico.   Hospital Dr. Pila is the owner and operator of a hospital of the same name located in Ponce, Puerto Rico

6.      Defendant Doctor Alfredo A. Bravo Colón ("Dr. Bravo") is a medical doctor, married to codefendant Jane Doe and together with her constituting a conjugal partnership, who intervened in the treatment of Mrs. Migdalia Arroyo Picart and her daughter A.M.G.A.   Dr. Bravo and his wife are domiciled in Ponce, Puerto Rico where they reside.

7.      All of the other defendants are also citizens and residents of the Commonwealth of Puerto Rico or states other than Massachusetts.   John Does 1, 2, and 3 and A, B and C Corporations are persons and/or corporations, whose identities

are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

8.   Unknown Insurance Companies A through H, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

**Factual Allegations**

9.   On November 21, 1996 Migdalia Arroyo Picart attended her first prenatal visit at the office of Dr. Alfredo A. Bravo Colón.   She was 35 years old, her last menstrual period was on October 09, 1996 and the expected day of confinement was July 16, 1997.

10.   During said first prenatal visit Mrs. Arroyo's blood pressure was 130/60 and her weight was 295 pounds, with a history of nine pregnancies, three deliveries, and five abortions. Although Mrs. Arroyo was obese, Dr. Bravo failed place her on a special diet. A follow up visit was scheduled for December 7, 1996.

11.   On December 7, 1996 Mrs. Arroyo went to Dr. Bravo's office for her second prenatal visit. Her weight was 291 pounds and her blood pressure was 120 over 80.

12.   Mrs. Arroyo visited Dr. Bravo again on December 18, 1996. During said visit her weight was 293 pounds, her blood pressure was 110 over 80, and her fundus height was measured at 10.5 cm.

13.    A sonogram performed on December 23, 1996 established Mrs. Arroyo's pregnancy at ten weeks and three days of gestation, with an estimated date of confinement of July 16, 1997.

14.     Mrs. Arroyo's prenatal care continued uneventfully until May 12, 1997 when she had to be hospitalized because of premature labor. She referred having pain in the pelvic and lower back area.   Mrs. Arroyo's weighed 290 pounds and her gestational age was 34 weeks.

15.     According to the medical records Mrs. Picart was discharged home on May 16, 1997 with a diagnosis of intrauterine pregnancy at 34 weeks, not delivered, urinary tract infection and premature labor.

16.     On May 30, 1997 Mrs. Arroyo was again admitted to Hospital Dr. Pila. With an estimated date of confinement of July 16, 1997 she was 33 at weeks and two days of gestation, which placed baby A.M.G.A. at risk for developing respiratory distress syndrome. According to the medical record Mrs. Arroyo had irregular contractions and her membranes were intact.

17.     The nursing staff at Hospital Dr. Pila described Mrs. Arroyo as a term pregnancy, clearly a deviation from the standard of care since Mrs. Arroyo was only in the 33rd week of her pregnancy.

18.     On March 30, 1997 at 6:30 a.m., without a prior physical evaluation, Dr. Bravo gave a telephone for the nursing personnel to administer Dextrose at 5% and Pitocin 30cc stat. According to the medication chart, the Dextrose and Pitocin were administered to Mrs. Arroyo at 7:30 am.

19.     At 8:00 a.m. Dr. Bravo physically examined Mrs. Arroyo, noting that she had uterine contractions, and a fetal heart rate of 140. A vaginal delivery was planned. Dr. Bravo failed to establish and/or document Mrs. Arroyo's stage of delivery and effacement, but nevertheless Pitocin was increased to 60cc.

20.     According to Mrs. Arroyo's  induction chart Pitocin was steadily increased to 80cc until 11:00 a.m.. At that time Dr. Bravo evaluated her and called the operating

room in order to perform a Cesarean section because Mrs. Arroyo's labor had failed to progress due to occiput transverse presentation.

21.    Mrs. Arroyo was transferred to the operating room at 12:00p.m. Anesthesia was started at 12:35 pm. Surgery began at 12:45p.m. and was concluded by 1:25p.m.

22.    Baby A.M.G.A. was born at 12:58 p.m. The amniotic fluid was clear, her Apgar score was 5 at 1 minute and 7 at 5 minutes, and she required endotracheal intubation and assisted ventilation because of impaired respiratory effort.

23.    According to baby A.M.G.A.'s medical record, she weighed 5 pounds 10 ounces, measured 18 inches in length, with a head circumference of 13 inches and her footprint appeared smaller than a 36 week baby.

24.    Initially baby A.M.G.A. had a strong cry, but then she suddenly turned cyanotic, with no cry or activity and was limp. She had to be suctioned, bagged with premie mask, intubated and bagged with oxygen via endotracheal tube for 5 minutes. According to the medical records baby A.M.G.A. was then extubated and transferred to the nursery.

25.    Transferring baby A.M.G.A. at that time to the well-baby nursery for routine care was a departure from the standard of care, since she was at an increased risk for hypoxia, hypoglycemia, respiratory distress, hypothermia, apnea and infections.

26.    A chest X-ray showed respiratory distress syndrome, yet she was not administered surfactant. Moreover, arterial blood gases were not taken, another clear departure from the standards of care by Hospital Dr. Pila's medical and nursing staff.

27.    According to the medical record, upon admission to the nursery baby A.M.G.A. was hypothermic (35.4C rectal), hypoactive and limp. She was placed on 50%

oxyhood after her $O_2$ saturation was only 79%, and had cyanotic skin. A blood culture showed no growth.

28.     A.M.G.A.'s oxygen saturation dropped to 80% at 2:00p.m., 79% at 2:15 p.m., and 79% at 2:30p.m. (cyanotic skin and retractions noted). At 2:47 p.m. an arterial blood gas test was done with the following results: pH 7.23/$pCO_2$ 52.6/$pO_2$ 39, $O_2$ saturation 61.9% bicarb 21.8 and BE-6.0 in a 50% hood. According to the medical record, at 3:02 p.m. an IV was given with Dextrose at 8 cc / hour. At 3:15 p.m. oxygen saturation was at 76%, at 3:30 p.m. it had dropped to 74% and she had retractions.

29.     At 3:33 pm Dr. Meléndez intubated the baby and bagged her. The skin color improved and her oxygen saturation increased to 97% at 3:35pm. Baby A.M.G.A. was transferred to the NICU at Hospital de Distrito de Ponce at 3:53 pm via ambulance, accompanied by Dr. Meléndez and respiratory therapy personnel, with bagging being continued en route.

30.     A venous ASTRA test performed at or around 2:15 pm showed a glucose level of 16 (severe hypoglycemia), Na=134, K=5.16, Bun=5; Creatinine=0.6, chloride= 107, $CO_2$ = 22. The reactive protein test was negative. A complete blood count was also performed and the following results were registered: WBC 18.2K, HGB 17.3, Hct 49.0, platelets 226K, lymphs 68, neut 26, mono 3, Eos 3 and 10 NRCBC's 20.

31.     Dr. Bravo and the medical staff at Hospital Dr. Pila deviated from the standard of care as they failed to administer antenatal steroids (Betamethasone or Dexamethasone) to accelerate fetal pulmonary maturation in light of Mrs. Arroyo's estimated gestational stage.

32.     In accordance with the standard of care the use of Pitocin for augmentation of labor in this case was contraindicated since its purpose is to activate and propel the delivery, and in a premature delivery such as baby A.M.G.A.'s the

6

opposite was required. Furthermore, the standard of care required the use of tocolytic agents to prolong delivery in order to mature the baby's lungs with the use of steroids. The administration of steroids would have allowed fetal lung maturation to occur which would have eliminated or substantially reduced the occurrence and severity of respiratory distress syndrome.

33.     Having failed to initiate tocolysis at 33 weeks and two days of gestation in order to delay delivery and administer steroids, baby A.M.G.A. was subject to all of the risks of iatrogenic prematurity.

34.     According to the medical standards of care, had A.M.G.A.'s delivery been delayed and steroids administered, she would not have developed spastic diplegia cerebral palsy. The periventricular area of her brain would have matured, she would not have been vulnerable to hypoxic/ischemic injury and she would not have had severe respiratory distress syndrome.

35.     The medical staff and nursing staff of Hospital Dr. Pila failed to timely diagnose and/or asses that baby A.M.G.A. had severe hypoglycemia, nor did they provide appropriate treatment for the hypoglycemia once identified.

36.     It was a deviation from the standard of care by the personnel at Hospital Dr. Pila not to have tested baby A.M.G.A. for hypoglycemia and, therefore, they failed to promptly treat her severe hypoglycemia once it was identified.

37.     Additionally, it was a departure from the standard of care not to have reintubated her when she developed persistent hypoxemia and mixed acidosis. The combination of hypoxemia and hypoglycemia acted synergistically to cause more central nervous system damage than either one of said conditions alone could have caused. Further, it was a departure from the standard of care to admit and/or allow Mrs.

Arroyo to deliver her baby at Hospital Dr. Pila which did not have a neonatal intensive care unit.

38.     Moreover, it was a clear deviation from the standard of care not administering surfactant to A.M.G.A.'s to treat her respiratory distress syndrome. One of the recognized complications of respiratory distress syndrome is the alteration of cerebral blood flow which has been shown to lead to central nervous system ischemia, especially in the periventricular area of a premature infant, which leads to cerebral palsy and multiple other insults.

39.     As a direct consequence of the defendants' multiple departures from the standard of care surrounding the birth of baby A.M.G.A. at Hospital Dr. Pila, she suffered hypoxic-ischemic hypoglycemia, which led to brain damage that is permanent and includes: spastic quadriparesis cerebral palsy; severe developmental delay; chronic lung disease/ reactive airway disease; recurrent pneumonia; severe gastro esophageal reflux; severe swallowing disorder with aspiration; and failure to thrive.

40.     A.M.G.A.'s respiratory distress syndrome became progressively more severe due to the defendants' multiple departures from the standard of care. She developed bilateral pneumothoraces and suffered a cardiac arrest. Consequently she developed chronic lung disease and required an endotraqueal tube for two months after birth.

41.     She had numerous hospital admissions for pneumonia, failure to thrive, surgery for tonsillectomy and adenoidectomy, and admission for dehydration. She also had a G-tube and Nissen fundoplication in June 2001.

42.     As a result of defendants' negligence and the birth injuries she sustained, A.M.G.A. is a severally and permanently injured child with cerebral palsy and the

ensuing host of disabilities, defects and abnormalities related to this condition, who has no hope of a normal life and will require lifelong care for her condition.

43.    Because her parents have limited economic resources, A.M.G.A. has not been able to receive sufficient quality professional care or therapy to help her deal with his physical, neurological and emotional conditions.

44.    The condition of A.M.G.A. was caused by the defendants' negligence, all of whom departed from the medical standards of care and otherwise failed to act in a prudent, reasonable or responsible manner in the medical care provided to Mrs. Arroyo and her baby, and in fact caused the child's present and future condition.

45.    More specifically, the defendants' departures from the medical standards and/or professional negligence include, but are not limited to: inappropriate determination of gestational age and expected date of delivery; inappropriate induction/augmentation of labor with Pitocin; failure to administer tocolytic agents and/or otherwise delay labor and delivery; improper administration and or monitoring of Pitocin; failure to administer antenatal steroids to accelerate fetal pulmonary maturation; failure to transfer a patient at risk for premature labor to a hospital facility with high risk obstetrical service and a neonatal intensive care unit; delivering A.M.G.A. at Hospital Dr. Pila which did not have a neonatal intensive care unit; transferring high risk baby A.M.G.A. to the well-baby nursery for routine care; failure to promptly administer surfactant; failure to perform periodic bedside glucose checks; failure to prevent and to promptly diagnose and effectively treat baby A.M.G.A.'s hypoglycemia; failure to timely administer IV fluids shortly after baby A.M.G.A.'s birth; and failure to promptly reintubate baby A.M.G.A. when she showed persistent hypoxemia and mixed acidosis.

46.    The result of the defendants' failure to prevent, properly diagnose and treat Mrs. Arroyo's and baby A.M.G.A's conditions prior, during and after her birth has

been devastating.   Baby A.M.G.A. now is catastrophically injured, with severe brain damage and physical abnormalities that are permanent and incapacitating. The damages of A.M.G.A. resulting from defendants' negligence are reasonably estimated at a sum in excess of $10,000,000., including the cost of her life-long care.

47.     The fetal heart tracings of baby A.M.G.A.'s delivery were requested from Hospital Dr. Pila on multiple occasions. As of this date they have failed to produce said tracings, claiming that they have been misplaced.

## COUNT I

### (Medical Malpractice, Vicarious Liability - 31 L.P.R.A. § 5141; 5142)

48.     Paragraphs 1 through 47 of this Complaint are incorporated by reference as if fully set forth herein.

49.     Hospital Dr. Pila, Dr. Alfredo Bravo Colón, and the Doe Defendants had a duty to provide medical care to Mrs. Arroyo and baby A.M.G.A. that complied with the applicable standards of the medical profession. Notwithstanding, Hospital Dr. Pila, Dr. Bravo, and the Doe Defendants breached that duty as set forth above.

50.     Codefendant Hospital Dr. Pila is further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein and by its medical and nursing staff that intervened with Mrs. Arroyo and A.M.G.A., for its negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses, including Dr. Bravo.

51.     There is a clear and direct causal link between Hospital Dr. Pila, Dr. Bravo, and the Doe Defendants' medical malpractice and the damages sustained by plaintiff, as set forth above.

## COUNT II

### (Direct Action Against Insurers - 26 L.P.R.A. § 2003)

52.    Paragraphs 1 through 51 of this Complaint are incorporated by reference as if fully set forth herein.

53.    Defendants Insurance Companies A through H have a contractual obligation to compensate those who are damaged by the medical errors and omissions of Hospital Dr. Pila, Dr. Bravo, and/or the Doe Defendants.  As set forth in Count I, above, those defendants committed medical malpractice with respect to baby A.M.G.A. and her mother.   Moreover, there is a clear and direct causal link between this misconduct and the damages sustained by plaintiff, as set forth above.

54.    Under 26 L.P.R.A. § 2003, plaintiff has a right to reclaim directly against the corresponding insurers of Hospital Dr. Pila, Dr. Bravo, and the Doe Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that the Court enter final judgment against defendants:

1.    Declaring defendants to be in violation of 32 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. § 2003, as alleged hereinabove.

2.    Finding defendants jointly and severally liable to plaintiff for the economic and non-economic damages sustained by plaintiff, plus applicable interest and costs.

3.    Awarding plaintiff such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in the complaint set forth above.

In San Juan, Puerto Rico, this 5th day of May, 2015.

Respectfully submitted,

s/David Efron
David Efron
USDC-PR 125701
**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiff*
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515
e-mail: david@davidefronlaw.com